Preston Bernard **ARNOLD**, Appellant,

v.

**STATE of Texas, Appellee.**

Nos. 11–97–00393–CR to
11–97–00395–CR.

Court of Appeals of Texas,
Eastland.

Dec. 8, 1999.

Robert Udashen, Milner, Lobel, Goranson, sorrels, Udashen, & Wells, Attys. at Law, Dallas, for appellant.

Bill Hill, Crim. Dist. Atty., Kimberly Lafferty, Asst. Dist. Atty., for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

## OPINION

### PER CURIAM.

Appellant pleaded guilty to two indictments for aggravated assault[1] and one indictment for failure to stop and render aid.[2] He stipulated that the enhancement paragraph in each indictment was true.[3] The jury assessed his punishment at confinement for 25 years for aggravated assault against Carl Edward Maple,[4] confinement for 10 years for aggravated assault against Debra Sparks,[5] and confinement for 10 years for the failure to stop and render aid to Marcus Everett.[6] Appellant argues the same two issues on each appeal. We affirm.

### Background Facts

The record shows that appellant met his estranged wife, Jennifer Arnold, at her place of work on the morning of March 17, 1997. He pushed his way into a crowded elevator where she stood with a co-worker. When the elevator reached Jennifer's destination, the eighth floor of the NationsBank building in downtown Dallas, the co-worker exited; appellant pulled Jennifer back into the elevator. On the elevator, appellant showed Jennifer a .22 caliber revolver and told her that she had two choices: to live or to die. They rode to the first floor and exited into the lobby. Jennifer began "pulling" appellant, who was holding her tightly, toward a security guard, Carl Edward Maple. She pleaded with Maple to help her.

Maple directed appellant and Jennifer into the nearby property manager's office. He "mouthed" to the property manager to go and to call "9–1–1." Inside the office, Maple asked appellant if he had a gun. Appellant pulled the gun from his pocket and pointed it toward Jennifer. She testified that she felt the barrel of the gun touch her face. The gun discharged, and the bullet hit Jennifer in the face. She ran from the room and hid elsewhere in the building.

After scuffling with Maple and discharging the gun again, appellant ran from the building into the adjoining parking garage. He threatened the garage attendant, Debra Sparks, with the gun when she asked him for $2.50 to pay for his parking. A high-speed chase with police ensued through downtown Dallas and north on the Tollway. Appellant jumped from his truck and ran toward an apartment complex. The police caught him when he fell 20 feet down the bank of a creek near the complex. In four indictments, appellant was charged with three aggravated assaults and one failure to stop and render aid to Marcus Everett, a motorist whose car appellant hit during the chase.[7] Appellant

1. TEX. PENAL CODE ANN. § 22.02(a) and (b) (Vernon 1994) defines the offense and provides that it is a second degree felony.

2. TEX. TRANSP. CODE ANN. § 550.021(Vernon 1999) defines the offense. It is a third degree felony for purposes of enhancement. See TEX. PENAL CODE ANN. § 12.41(1) (Vernon 1994).

3. Under TEX. PENAL CODE ANN. § 12.42(a)(3) and (b) (Vernon 1994 & Supp. 1999), the offenses were enhanced to first and second degree felonies. The punishment for a first degree felony is confinement for life or a term of 5 to 99 years, plus an optional fine

not to exceed $10,000. TEX. PENAL CODE ANN. § 12.32 (Vernon 1994). The punishment for a second degree felony is confinement for 2 to 20 years, plus an optional fine not to exceed $10,000. TEX. PENAL CODE ANN. § 12.33 (Vernon 1994).

4. Cause No. 11–97–00393–CR.

5. Cause No. 11–97–00394–CR.

6. Cause No. 11–97–00395–CR.

7. Appellant has appealed his conviction for the aggravated assault of Jennifer Arnold in

pleaded guilty to each offense and went to the jury for punishment.

### Charge on Extraneous Offenses

In his third, fourth, and fifth issues,[8] appellant argues that the trial court erred in each case by failing to instruct the jury on the State's burden of proof with regard to extraneous offenses. The Code of Criminal Procedure provides that, during the punishment phase:

> [E]vidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to ... any other evidence of an extraneous crime or bad act *that is shown beyond a reasonable doubt by evidence* to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act. (Emphasis added)

TEX. CODE CRIM. PRO. ANN. art. 37.07, § 3(a) (Vernon Supp.1999). The Court of Criminal Appeals has held that the jury is the "exclusive judge of the facts" and is to determine whether the State has proven any extraneous offenses or bad acts beyond a reasonable doubt. *Mitchell v. State*, 931 S.W.2d 950, 954 (Tex.Cr.App.1996). The trial court must give the jury an instruction to that effect if the defendant so requests. *Mitchell v. State, supra.*

The trial court did not instruct the jury that the State had to prove any bad acts beyond a reasonable doubt before the jury could consider those acts to assess punishment. Appellant did not request such an instruction or object to its absence from the charge. Appellant argues that the failure to instruct the jury on the State's burden of proof in the punishment phase of trial should be treated the same as such a failure in the guilt/innocence portion. He contends that the failure to include the

instruction should be an automatic reversible error. See *Reyes v. State*, 938 S.W.2d 718, 721 (Tex.Cr.App.1996); *Geesa v. State*, 820 S.W.2d 154, 162 (Tex.Cr.App. 1991).

▆▆▆ Unlike the guilt/innocence phase, the State does not have to prove any particular elements during the punishment phase, and the "reasonable doubt" burden of proof is not constitutionally required for enhancement or extraneous offenses during the punishment phase. *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986); *Fields v. State*, 1 S.W.3d 687, 688 (Tex.Cr.App.1999); *Martinez v. State*, 4 S.W.3d 758 (Tex.Cr.App. 1999). The legislature has provided wide discretion for the jury to assess punishment. See TEX. PENAL CODE ANN. §§ 12.32–12.35 (Vernon 1994). Article 37.07, section 3(a) provides a specific burden of proof only for the consideraton of extraneous offenses of the type usually covered by TEX.R.EVID. 404(b). The jury is left to weigh all the other evidence introduced and to determine what punishment fits the crime. Thus, the rationale behind *Geesa* and *Reyes* does not apply in the punishment phase. Fields v. State, supra. The trial court is not required to give the jury an instruction on reasonable doubt in its punishment charge unless the defendant requests it. *Fields v. State, supra; Martinez v. State, supra.*

▆▆▆ Because the omission of the reasonable-doubt instruction required by Article 37.07, section 3(a) is not constitutional error, the harmless error analysis under TEX.R.APP.P. 44.2(a) does not apply. In *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex. Cr.App.1994), the court addressed the inapplicability of the former harmless error rule, TEX.R.APP.P. 81(b)(2) to charge error. Instead, the harm analysis set forth in TEX. CODE CRIM. PRO. ANN. art.

---

Cause No. 11–97–00392–CR. We have addressed the merits of that appeal in another opinion. See Arnold v. State, 11–97–00392–CR (Tex.App.—Eastland, November 4, 1999)(not reported).

8. Appellant's first, second, and sixth issues relate only to Cause No. 11–97–00392–CR. See Footnote No. 7.

36.19 (Vernon 1981) and *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1985), applies. To obtain a reversal in this case, appellant must demonstrate that the failure to include the instruction was "so egregious and created such harm" that he suffered "egregious harm." *Almanza v. State, supra* at 171. Appellant must show "actual, not just theoretical, harm." *Almanza v. State, supra* at 174.

■ The State introduced evidence of two extraneous offenses. Jennifer testified that appellant physically assaulted her on Valentine's Day prior to the commission of these offenses. The police were called, but no charges were filed. She also testified that, a week before these offenses, appellant made a threatening phone call to her at her father's house. She testified that the call scared her enough that she called the police. A little later, she looked outside and saw appellant sitting in his car down the street, watching her father's house. Appellant denied beating Jennifer on Valentine's Day; he also claimed that he was visiting some friends down the street from her father's house when she saw him in his car.

An examination of the record does not reveal "egregious harm." Appellant committed three violent crimes in a busy downtown building. He proceeded to commit another crime that put another person in danger during his high-speed flight from the police. Furthermore, appellant pleaded guilty to all four offenses. Several eyewitnesses testified about the events before, during, and after the crimes. Appellant admitted that he had parked outside his father-in-law's house during the early morning to observe Jennifer's movements, but he claimed that he declined his father-in-law's invitation to come inside and to wait for her because he was listening to the radio. Appellant also testified that he carried the gun with him because he feared that his father-in-law might try to kill him.

The punishments assessed were at the lower end of the range for the assaults and in the middle of the range for the failure to stop and render aid. Appellant does not contend that the evidence was insufficient to prove beyond a reasonable doubt that he committed the extraneous offenses, only that the instruction was not given. In short, we do not think that the jurors would have disregarded the extraneous offenses if the trial court had given a reasonable-doubt instruction. Other courts of appeals have applied this test to assess harm. See *Tow v. State*, 953 S.W.2d 546, 548 n. 1 (Tex.App.—Fort Worth 1997, no pet'n); *Yates v. State*, 917 S.W.2d 915, 923 (Tex.App.—Corpus Christi 1996, pet'n ref'd); *Smith v. State*, 899 S.W.2d 31, 35 (Tex.App.—Austin 1995, pet'n ref'd).

We overrule appellant's third, fourth, and fifth issues.

### Court's Admonishment on Punishment Range

■ Appellant argues in his seventh, eighth, and ninth issues that the trial court erred in failing to admonish him on the full range of punishment for each offense. The trial court informed him of the correct range of confinement for second and third degree felonies. The trial court also informed appellant that the offenses would be punishable as first and second degree felonies if the jury found the enhancement paragraph true.[9] The trial court neglected to inform appellant, however, that the jury could also assess a fine in addition to confinement. Appellant contends that this was a failure to comply with TEX. CODE CRIM. PRO. ANN. art. 26.13(a)(1) (Vernon 1989) and that the failure renders his guilty pleas involuntary and void.

The trial court correctly stated the range of possible terms of confinement for each offense, both with and without enhancement. The jury assessed appellant's punishment at terms of confinement well

---

**9.** Appellant originally pleaded "not true" to the enhancement paragraph but later stipulated that he was the defendant named in the judgment offered into evidence, effectively pleading "true" to the enhancement.

within the actual and stated ranges. The jury assessed no fines for the offenses. Under these circumstances, "substantial compliance" with Article 26.13(a)(1) has been shown, and appellant has failed to demonstrate that he was misled or harmed by the failure to state the applicable optional fines. Thus, no error has occurred. *Eatmon v. State*, 768 S.W.2d 310, 311–12 (Tex.Cr.App.1989); *Robinson v. State*, 739 S.W.2d 795, 801 (Tex.Cr.App.1987).

We overrule appellant's seventh, eighth, and ninth issues.

### This Court's Judgment

We affirm the judgments of the trial court.